Shaw C. J.
delivered the opinion of the Court. This is a writ of entry, and the question for the Court is, whether the demandant has established the legal title, in virtue of which he claims. That title is claimed as having been obtained by levy of an execution upon the demanded premises, pursuant to the statute, as the freehold estate of the tenant for his own life ; and this depends solely upon the question, whether under the will of Moses Brown the elder, by which he devised the mortgage and note of the tenant to his son Joseph Brown, and by force of the statute of uses, the tenant took a life estate in the premises.
It is contended, that as to the real estate mortgaged as security for the payment of the note, this, like any other real estate, passed to the devisee by force of the devise, and that the condition or trust to permit the father to remain in possession, was a use for the life of the father, and that by force of the statute of uses, this use became executed, so that the father took a legal estate of freehold for his own life. If so, the levy was right, and the demandant took a freehold for the term of the tenant’s life.
In order to estimate the force of this argument it is necessary to inquire a little more particularly into the relative situation of the parties.
It is manifest that this claim puts the title wholly on the effect of the devise and on the title as acquired under the will; and therefore that the circumstance that the tenant was himself the mortgager makes no difference. In other words, it stands on the same footing as if a stranger had mortgaged to Moses Brown the elder, under the same circumstances, and then he by his will, had given the note and mortgaged prem *223 ises to his grand nephew Joseph, in the same terms that he has done by this will. The relation of Moses Brown the elder was that of a mortgagee, who had not entered for condition broken. Moses Brown the tenant, was a mortgager, in possession ; as against the mortgagee, he was tenant at will without liability to account for the rents and profits, and with power to redeem the estate by payment of the debt for which it was pledged. As to all the rest of the world, he had an estate, which he might convey by deed, which he might further mortgage, and which might be taken by execution for his debts and sold in the mode prescribed by law.
Then what was the nature of the estate of the devisor, that is, of a mortgagee before entry for condition broken ? To most purposes, that of a lien, a pledge, a collateral security for the payment of a sum of money. To consider it in its largest extent, it was a defeasible estate, liable to be determined by the payment of the debt at any time before foreclosure. Now although this is an estate, a legal title, so far as it is necessary to secure the debt, yet the debt is considered as the principal; and even at law the estate is considered as modified and controlled by the nature and quality of the debt it is intended to secure.
So where it is to secure a joint debt, the mortgage shall be deemed a joint tenancy. Goodwin v. Richardson, 11 Mass. R. 469. So because the debt goes to personal representatives, the executor and not the heir shall be deemed seised of the mortgaged premises and have an action for them. Smith v. Dyer, 16 Mass. R. 18.
Here the debt is the principal subject of the bequest, and the estate is added by way of assignment. The devisor could give no greater interest than he himself had in it, which is the lien or defeasible estate before described.
Conformably to this view, in order to give any legal effect to the devise of the interest in the mortgaged premises, it must go to the same person to whom the debt is given, because it would be beneficial to the legatee of the debt, but not beneficial to any one else. The Court therefore ought not, unless required by some imperative rule of law, to put such a construction upon a devise of a mortgage, as to hold that the debt *224 goes to one, and the mortgage, which is a mere pledge for its payment, goes to another. Mr. Butler, in his very learned note upon the subject of conveyances and devises to uses, and in discussing the question, whether the statute of uses, which was passed before the statute of wills, can apply to the latter, states it as the result of the cases respecting the conjoint operation of the two, and upon the point whether a devise shall be executed in the immediate devisee, or in the supposed cestui que use, “ that where the estate is devised to one for the benefit of another, the court execute the use, in the first or second devisee, as it appears to suit best with the intention of the testator.” Co. Lit. 271, note 231.
That the purpose and intention of the testator in this respect will be inferred from the nature of the property itself, has been decided in a late case, Galliers v. Moss, 9 Barn. & Cr. 267, in which it was held, that although the words of a devise to trustees were sufficiently large to include mortgage property as well as real estate, the legal estate in the mortgage property did not pass to them, because the property devised to them was given to the use of certain persons in strict settlement, with limitations not applicable to mortgage property, but more applicable to property of which the party making the disposition was the sole and exclusive owner ; and upon the principle of devises of mortgage property the court were of opinion that it did not pass under the devise.
The Court are of opinion, that considering the nature of the estate held by the devisor, it was not such as the statute of uses could operate to transfer to the cestui que use, and therefore it is not important to consider what would have been the effect of a trust clause or condition in the will for the benefit of the devisee’s father, had it been the devise of an estate of which the testator was the beneficial owner. The general intent of the devisor, in giving this mortgage to his grand-nephew, would be defeated and not promoted, in construing this, so far as it is a devise of the legal interest in the mortgage, as a devise to the use of another person than the first devisee. Considering it as a trust, the tenant may have an eauitable beneficial interest, which may be a proper subject of investigation and protection elsewhere. In that case, it may he very important to *225 consider two questions which were raised in this case, and which are now immaterial, namely, whether it sufficiently appears that the devisee accepted the devise, and whether the tenant holds under him as cestui que trust, or upon his original title, as a mortgager upon whom no entry has been made for condition broken. In general, the assent of a devisee will be presumed; but when a devise is made upon onerous conditions, constituting charges not only upon the estate devised, but upon the person of the devisee, it may become an important question, according to the circumstances, whether such a presumption arises.
It has been contended that, under the facts agreed, it may be considered, that by a mutual consent the mortgage is at an end, that the devisor considered himself as having acquired a title to the land, and intended to devise the land, and to secure a life estate in it to his nephew, the original mortgager, and that in effect the mortgage was foreclosed.
But it is quite impossible to consider it in this point of view. It may be highly probable, that from the relation subsisting between the parties, from the inability of the mortgager to pay the debt, or from other causes, it was expected that the debt would never be paid, and that the mortgagee would get nothing but the land mortgaged. But it cannot be understood that the devisor considered the debt merged in the land, because he expressly gives the note. Having never entered for condition broken, he had no other interest in the land than that of a mortgagee who had not entered, and' could have none without some further conveyance or release from the mortgager, and none such wras given. He could not, by force of his will, change the nature of the estate, had he so intended. Had he released the mortgaged land or devised it to the mortgager, it would have enlarged the estate of the mortgager, who would have been in as of his old estate, discharged of the incumbrance. If, then, it be asked how the will was to operate, and what was the meaning and effect of the devise on condition, &c., the question appears to admit of one of two answers ; either that when the devisee should come into possession of the estate, as mortgagee, he should hold the land on condition or trust to permit his father to remain in possession *226 during his life ; or that, as such mortgagee, he should b( restrained from exercising the general right of a mortgaged by entering so as to take the rents and profits d iring the term of the natural life of the father, thereby enlarging the right of the father, as a mortgager on whom no entry had been made bv the mortgagee ; but in neither case creating a new estate by devise which could be executed in possession by the statute of uses.
Had the demandant levied his execution generally, on the estate of the tenant as an estate in fee, as he held it under his original seisin, before the mortgage, making no deduction from the appraisement on account of the incumbrance, I am not prepared to say that he would not have taken a seisin, and such estate as the tenant had in it, which he could have held against all the world except the mortgagee and his assigns.[1] But as it is conceded that the estate was not equal in value to the debt, this defeasible estate might have been of no benefit, and the demandant has not so levied or put his claim upon that ground; on the contrary, he levied on it by appraising the value of the tenant’s life interest upon the common principles of computing annuities, as a life estate derived under the devise and by the operation of the statute of uses ; and we are all of opinion, that he has not established such title.

Demandant nonsuit.

 By Rev. Stat c. 73, § 31, the right of redeeming mortgaged land may be set off on execution, in the same manner as unincumbered land, except that the appraisers shall deduct the value of the incumbrance from the estimated value of the premises.